UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

| | |
|---|---|
| **KATHLEEN SHORT AND HAROLD WHITE,**<br><br>　　　　　**Plaintiffs,**<br><br>v.<br><br>**UBER TECHNOLOGIES, INC.,**<br><br>　　　　　**Defendant.** | CASE NO. 2:21-cv-14057-AMC |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR STAY FIRST AMENDED COMPLAINT, STRIKE CLASS ALLEGATIONS AND COMPEL INDIVIDUAL ARBITRATION**

**I.      INTRODUCTION**

Plaintiffs do not dispute that they voluntarily agreed to arbitrate their claims in this action. Plaintiffs further concede that their Agreements – including their waiver of class and collective actions – are valid and enforceable. Plaintiffs do not dispute that Section 1 of the FAA provides only a ***narrow*** exception for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," and that the focus is on the class of workers, not Plaintiffs individually. 9 U.S.C. § 1. Finally, the data Plaintiffs rely upon is entirely consistent with Uber's evidence, showing that less than 3% of trips nationwide by drivers using the Uber App were interstate trips.

Recognizing that the data does not support them, Plaintiffs contend that they nevertheless qualify for the narrow Section 1 exemption under two theories, neither of which have merit. First, they misleadingly rely on the gross number of interstate trips by the "class," but ignore the fact that these interstate trips make up less than 3 percent of the total trips. Second, Plaintiffs contend – against the weight of established jurisprudence – that their *intrastate* trips transporting passengers to or from airports, bus stations or cruise ship ports enhance the interstate quality of their purely local trips. But in *Hamrick v. Partsfleet, LLC*, the Eleventh Circuit specifically rejected this argument. 2021 WL 2546405 (11th Cir. Jun. 22, 2021). *Hamrick* held that the focus of the Section 1 exemption is on interstate travel by the worker, not what they transport. Thus, neither undisputed evidence nor controlling legal authority support Plaintiffs' attempt to fit within the admittedly narrow Section 1 exemption. Finally, even if Plaintiffs were exempt from the FAA, the Parties *current* agreements – not the superseded agreements Plaintiffs quote – expressly require arbitration under Florida law if the FAA does not apply. Thus, based on the undisputed facts and law, Uber's Motion should be granted.

**II.   PLAINTIFFS CANNOT ESTABLISH THE APPLICABILITY OF THE NARROW SECTION 1 EXEMPTION TO THE FAA**

**A.   Plaintiffs Make Critical Concessions as To Their Obligation To Arbitrate.**

Plaintiffs do not dispute the critical facts that support compelling individual arbitration of this action: (1) they agreed to arbitrate and did not opt out of arbitration; (2) their claims in this action are within the scope of their arbitration agreements; (3) the agreements are enforceable under applicable state contract law; and (4) they waived any right to bring a collective or class action in arbitration. Despite these concessions, Plaintiffs argue their agreement is excluded from the FAA by its inapposite Section 1 exemption for a narrow class of individuals that qualify as transportation workers akin to seamen or railroad employees. As discussed below, Plaintiffs' arguments include a series of strawmen, refuting arguments Uber never made, while offering purported "evidence" that instead supports Uber's contention that the class of personal passenger providers like Plaintiffs were not "actually engaged in interstate commerce" under controlling precedent including the Eleventh Circuit's recent decision in *Hamrick*.

**B.   Uber Does Not Seek to Delegate to the Arbitrator the Dispute Regarding Applicability of the Section 1 Exemption.**

The first red herring Plaintiffs proffer is their contention that Uber seeks to delegate to the arbitrator the determination whether the Section 1 exemption applies, supposedly ignoring *New Prime Inc. v. Oliveira*, -- U.S. --, 139 S.Ct. 532, 538-544 (2019), which held that this is a matter for the Court. (ECF 34, pp. 4-5.) This is plainly incorrect. Uber addressed the delegation clause in the Arbitration Provision only because Plaintiffs' counsel declined to stipulate that Plaintiffs' *only* objection to arbitration was the FAA Section 1 exemption. Hence, Uber necessarily addressed the application of the delegation clause in the event Plaintiffs raised other issues that were delegated to the arbitrator. Since Plaintiffs did not do so, Uber agrees that the delegation clause is irrelevant

to the Section 1 issue.

      **C.**    **Plaintiffs Proffered Evidence Is Entirely Consistent with Uber's Evidence That the Overwhelming Majority of Drivers' Trips Did Not Involve Interstate Travel.**

              **1.**    *Plaintiffs Offer Insufficient Evidence To Establish The Class of Florida Drivers They Seek to Represent Engaged in Interstate Commerce.*

Plaintiffs' next misdirection is their contention that Uber is seeking to determine whether Plaintiffs "engaged in interstate commerce" based on each Plaintiff's *individual* experience, rather than that of the class of workers to which they belong. (ECF 34, p. 12.) To the contrary – as Uber noted in its Motion, "the question is 'not whether the *individual worker* actually engaged in interstate commerce, but whether *the class of workers to which the complaining worker belonged* engaged in interstate commerce.'" (ECF 31, p. 10, *citing Wallace*, v. *GrubHub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (citations omitted); *accord*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001).

Plaintiffs cherry pick selective data provided in another Uber action (*Singh v. Uber Technologies, Inc.*) as supposed proof that Uber hid the true facts offered by the Declaration of Juan Manuel Contreras. (ECF 34, p. 12.) From the *Singh* action, Plaintiffs cite the total number of interstate trips nationwide from 2014 through part of 2020, but gloss over the fact that this is still *less than 3 percent* of the total number of trips. (ECF 34, pp. 13-14; Ex. A, Resp., No. 1.) In fact, those interrogatory responses in *Singh* are entirely consistent with Uber's evidence here, showing that from 2015 through all of 2020, nationwide only 2.5% of rides provided by Uber transportation providers crossed state lines, and *in Florida* only 0.02% of rides – far less than 1 percent – were interstate. (ECF 31-2, Contreras Decl. ¶¶ 3-4.) According to the Interrogatory responses in *Singh*, the percentage of total rides that crossed state borders for this time period ranged from 2.12 to 2.48% (ECF 34, Ex. A at 8) – fully consistent with Contreras' more updated testimony in this case

which now includes *all* of calendar year 2020. (ECF 31-2, Contreras Decl. ¶ 3.)

Plaintiffs also tout a statistic that 15-20% of drivers performed at least one interstate trip, overstating the bottom of the range (as low as 12.69%), and ignoring the rest of Uber's referenced discovery response that puts this number in context. (ECF 34, pp. 14-15.) Only 12.8% of drivers in 2020 made *any* interstate trips, and for those drivers, those interstate trips amounted to *less than 2% of their trips*. (ECF 34, Ex. A, pp. 8-9.) Plaintiffs bury the fact that the majority of drivers performed no more than a handful of interstate trips (like Plaintiff White), with 80% of all interstate trips being driven by *just 5% of all drivers*. (ECF 34, Ex. A, p. 8, ¶1.) This undisputed evidence soundly refutes Plaintiffs' conclusory statement that "Named Plaintiff Harold White and Uber drivers as a whole (meaning across the nation) cross state lines…" (ECF 34, p. 16 n.5.)

Even if drivers' interstate trips were more frequent, they would be mere "happenstance" or anomalies resulting from providing local trips in a community coincidentally bordering another state, as in White's circumstance of living near the Florida/Georgia state line. Since their trips would not be an inherent aspect of their jobs, such evidence would be insufficient to qualify for the exemption, as Uber noted. (ECF 31, p. 9, citing *Wallace*, 970 F.3d at 800 ("[S]omeone whose occupation is not defined by its engagement in interstate commerce does not qualify for the exemption just because she occasionally performs that kind of work."); *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 916 (N.D. Cal. 2020) (drivers using the Lyft app are not exempt under Section 1, and "[i]nterstate trips that occur by happenstance of geography do not alter the intrastate transportation function performed by the class of workers"); *Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919, 932 (N.D. Cal. 2020) (citing statistics produced by Uber and holding that interstate rides provided by drivers using the Uber Driver App are not only "incidental" to interstate commerce but also "rare"); *Aleksanian v. Uber Techs., Inc.*, No. 1:19-cv-10308 (ALC), 2021 U.S.

Dist. LEXIS 43010, *12-13 (S.D.N.Y. Mar. 8, 2021) ("Uber drivers do not belong to a class of workers 'engaged in interstate commerce,'" and are "not exempt from the FAA pursuant to § 1."). Plaintiffs do not acknowledge much less distinguish any of these authorities.

Uber drivers who occasionally – on average 2.5% of the time nationwide and far less than 1% of the time in Florida – made interstate trips are not, as a class, "engaged in foreign or interstate commerce." *Capriole*, 460 F. Supp. at 932. The court there so concluded based on the same percentage of interstate trips – 2.5%. Plaintiffs therefore do not – and cannot – establish that the class of drivers to which they belong are "engaged in interstate commerce" based on the rare and only incidental interstate trips.

    **2.** **The Eleventh Circuit's** *Hamrick* **Decision Rejected Plaintiffs' Focus on The "Flow of Commerce."**

Given the rarity of interstate trips, Plaintiffs argue that their predominate and purely *intrastate* trips can bring them within the residual clause because they were sometimes "transporting passengers continuing in the flow of interstate commerce" to or from bus or railway stations and cruise ports as "part of a larger interstate journey in which the driver is 'engaged in interstate commerce.'" (ECF 34, pp. 13-17.) However, the Eleventh Circuit conclusively rejected this argument in *Hamrick*.

The drivers in *Hamrick* cited the same authorities Plaintiffs rely upon– *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001) and *Walling v. Jacksonville Paper Co*., 317 U.S. 564 (1943). (ECF Dkt. No. 34, pp. 16-17.) *Hamrick* declined to follow this authority, noting that neither case found the exemption applicable, and that the interpretation of the phrase "in interstate or foreign commerce" under the Fair Labor Standards Act ("FLSA") in *Walling* is irrelevant because that law has a remedial purpose, unlike the narrow Section 1 exemption; in any event, the FLSA only requires the worker be "engaged in commerce," whereas the FAA exemption applies to a "class of

workers" "engaged in foreign or interstate commerce." *Hamrick*, 2021 WL 2546405, at \*7-9. The Court concluded, "[t]hese extra words matter (as all words matter) and they especially matter here where the issue is whether the class of transportation workers has to actually engage in interstate commerce." *Id*. at \*9.[1] The court found that the text of Section 1 "is directed at what the class of workers is engaged in, and not what it is carrying." *Id*. at \*10. The court further noted that this interpretation is consistent with the text of the residual clause because seamen and railroad employees "travel from state-to-state, or country-to-country, going from one place to the other." *Id*. at \*11. As a result, "[t]he drivers' view of the residual clause –that it applies to a class of workers that only make 'intrastate trips' transporting goods that have moved in interstate commerce—is inconsistent with the general interstate and international work of 'seamen' and 'railroad employees.'" *Id*. at \*11. Far from citing outdated law as Plaintiffs incorrectly suggest, Uber noted several post-*New Prime* decisions (*Wallace*, *Capriole*, *Rogers*), including multiple 2021 decisions reaching the same conclusion: *Osvatics v. Lyft, Inc*., 2021 WL 1601114, at \*15 (D.D.C. Apr. 22, 2021) (Lyft drivers as a class are not "engaged in …interstate commerce" in part because no "established link between such intrastate rideshare trips and the channels of commerce that are designed to facilitate passengers' interstate journeys."); *Aleksanian*, 2021 WL 860127, at \*8 (*Yellow Cab's* "reasoning is just as applicable" to Uber rideshare drivers).[2] *Hamrick* is

---

[1] *Abel v. Southern Shuttle Serv., Inc*., 631 F.3d 1210 (2011) (ECF Dkt. No. 34, p. 13) is inapposite because it construed the words "interstate commerce" in the Motor Carrier Act. In *Hamrick* the Eleventh Circuit held the words of other laws cannot be assumed to have the same meaning in the FAA. *Hamrick*, 2021 WL 2546405, at \*9. Moreover, unlike drivers who use Uber, the plaintiff drivers in *Abel* worked for a shuttle service that regularly arranged through travel companies to provide customers airport shuttle service as an integrated part of the customers' overall interstate trip. *Abel*, 631 F.3d at 1216-17.

[2] Plaintiffs rely on inapposite cases where the interstate transportation was part of an unbroken chain of cross-border transportation of goods, like *Waithaka v. Amazon.com, Inc*., 966 F.3d 10 (1st Cir. 2020). (ECF Dkt. No. 34, p. 16.) Further, the factors used in *Lenz v. Yellow Transp., Inc*., 431 F.3d 348 (8th Cir. 2005) are not controlling to the extent contrary to *Hamrick*.

dispositive here, rendering the residual clause inapplicable even assuming the class of workers here transport goods or passengers "continuing in the flow of interstate commerce."[3]

### 3. Plaintiffs Cannot Refute the Fact that the Parties' Agreements Are License Agreement and Not Agreements to Perform Work for Uber.

Plaintiffs concede that "[t]o qualify for the Section 1 transportation worker exemption from the FAA, an individual: (1) must work for a business pursuant to a 'contract of employment.'" ECF 34, p. 6. Yet, even if Plaintiffs were within a class of transportation workers "engaged in interstate or foreign commerce," they still would not come within Section 1 because their Agreements merely *license* Plaintiffs to use the Uber Driver App for a fee; the Agreements do not require that Plaintiffs *perform work for Uber*.

Plaintiffs contend Uber's position "is flatly rejected by the Supreme Court's holding in *New Prime* ... because the Court there held that a "contract of employment" as used in the FAA can include a contract with independent contractors. (ECF Dkt. No. 34, p. 6.) However, *New Prime* merely held that a "contract of employment" includes a contract "to perform work," regardless of whether the worker is a traditional employee or an independent contractor. 139 S.Ct. at 539. Here, the Plaintiffs' agreements are not agreements to *perform work for Uber* as employees *or* independent contractors; they are agreements to allow drivers to use technology, the Uber App, to perform work for riders. Uber receives a fee each time this license is used; drivers do not perform work for Uber.

Plaintiffs contend the PAA "is necessarily a contract for the performance of work," because

---

[3] Without authority, Plaintiffs again claim their use of Uber's "credit card system" establishes "commerce" (ECF Dkt. No. 34, p. 5), erroneously relying on the broader definition under the Commerce Clause than the phrase "engaged in interstate commerce" as used in Section 1 of the FAA. *Circuit City*, 532 U.S. at 118-19 (Section 1 is more narrowly construed than Congress' power to regulate arbitration agreements under Section 2 of the FAA). *Hamrick* further rejected such assumptions that words in different statutes have identical meanings. *Hamrick*, 2021 WL 2546405, at *9.

it "specif[ies] how Uber drivers must use the app to perform work for Uber." (ECF 34, p. 7.) However, contrary to Plaintiffs' assertion, other courts have not "found [Uber's] agreement [to be] clearly a 'contract of employment'" under section 1 of the FAA "without the need for much analysis." (ECF 34, p. 6.) The subject was not even discussed in *Sienkaniec v. Uber Techs. Inc.*, 401 F. Supp. 3d 870 (D. Minn. 2019) or *Singh v. Uber Techs. Inc.*, 939 F.3d 210 (3rd Cir. 2019) (court remanded remaining issues raised by the parties). *New Prime* does not "significantly expand application of the residual clause of § 1 to drivers, like Plaintiffs here" (ECF Dkt. No. 34, p. 11) because Plaintiffs here are bound by a licensing agreement to use the Uber App and not a contract to perform work for Uber. No authority holds that a technology licensing agreement is a "contract of employment" invoking the FAA Section 1 exemption.

   **D.**   **Plaintiffs' Other Section 1 Arguments Are Unavailing.**

  Plaintiffs' other contentions do not permit them to avoid their agreements to arbitrate. First, Plaintiffs concede that the class action waiver in the Arbitration Provision applies to "any dispute in arbitration" (ECF 34, pp. 18-19), and thus Plaintiffs' arbitration must be on an individual basis only. Far from "providing the Court with another reason to deny the Motion" (ECF 34, p. 19), the seminal decision in *AT&T Mobility LLC. v. Concepcion,* 563 U.S. 333, 351 (2011) affirms that Uber's class waiver is enforceable in arbitration. In any event, the applicability of FAA Section 1 is not impacted by the presence or absence of a class waiver.

  Second, ignoring *Gray v. Uber, Inc.*, 2019 WL 1785094, at *2 (M.D. Fla. Apr. 10, 2019), *appeal dismissed*, 2019 WL 3408912 (11th Cir. June 18, 2019), Plaintiffs rely on out-of-circuit authority to contend that they could qualify for the Section 1 exemption by transporting passengers rather than goods. (ECF 34, p. 11.) As discussed above, assuming *arguendo* Plaintiffs interpretation is correct, *Hamrick* forecloses their contention that they are part of a class of workers

who actually engaged in interstate commerce by almost entirely *local* transportation of passengers.

**III.   THE CURRENT VERSION OF THE PARTIES ARBITRATION AGREEMENT EXPRESSLY PROVIDES FOR APPLICATION OF FLORIDA LAW IF THE FAA DOES NOT APPLY**

Even if Plaintiffs could carry their burden of establishing they are exempt from the FAA (and they cannot), arbitration would still be required under applicable Florida law. Plaintiffs' contrary argument incorrectly relies upon language from a prior agreement which provided no express alternative to application of the FAA. (ECF 34, p. 19, citing ECF 31-1, Ex. B, p. 51, ¶ 15.1.) However, the current and applicable Platform Access Agreement ("PAA") "replaces prior agreements regarding the arbitration of disputes and is the full and complete agreement relating to the formal resolution of disputes covered by this Arbitration Provision," subject only to irrelevant exceptions. (ECF 31-1, Ex. C, p. 80, ¶ 13.9.) The current PAA further provides that Florida law applies if the FAA is inapplicable ("[i]f notwithstanding the foregoing, the [FAA] does not apply to this Arbitration provision, the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply.") (ECF 31-1, Ex. C, p. 74, ¶ 13.1(a).) Courts have expressly held that such "state law contingency clauses" compel enforcement of arbitration agreements under alternative state law where the agreement is exempt from the FAA under Section 1. *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (enforcing similar state law contingency clause and compelling arbitration despite applicability of FAA Section 1 exemption).

Even if Plaintiffs' Arbitration Agreements specified that the FAA governed without this state law contingency clause, and even if Plaintiffs were exempt from the FAA under Section 1, the arbitration clause would still be enforceable under Florida law because the arbitration provision clearly demonstrates the parties' intent to arbitrate as a matter of state contract law. *Kauffman v.*

*U-Haul Int'l, Inc.*, No. 5:16-CV-04580, 2018 WL 4094959, at *5 (E.D. Pa. Aug. 28, 2018) ("But, as a number of courts have determined, an arbitration clause can be enforced under state law even in the absence of a state law contingency provision.") (discussing *Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-CV-1023-MJR-SCW, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016) (collecting cases).

Plaintiffs' final grasp is an entirely unsupported argument that the FAA was intended to preempt enforcement of arbitration agreements under state law. It is beyond question that this is just the *opposite* of what the FAA was designed to do. *See, e.g.*, *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 595 (3d Cir. 2004)("In considering whether the inclusion of the exemption clause was intended to preempt state law regarding enforcement of arbitration agreements, we must keep in mind that Congress enacted the FAA 'to ensure judicial enforcement of privately made agreements to arbitrate,' rather than restrict the force of arbitration agreements.") quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238 (1985). Thus, even where the Section 1 exemption applies to remove the FAA from consideration, enforcement under parallel state law may compel the same result, and does so here. *Palcko*, 372 F.3d at 596 ("Here, enforcement of the arbitration agreement between Palcko and Airborne under Washington state law, as if the FAA 'had never been enacted,' does not contradict any of the language of the FAA, but in contrast furthers the general policy goals of the FAA favoring arbitration.") In sum, Plaintiffs provide no reason to deny arbitration under alternative, Florida law as the parties expressly agreed.

### IV.  CONCLUSION

Plaintiffs admit they agreed to arbitrate these disputes, and they offer no basis to escape that commitment under either federal or Florida law favoring enforcement. As Plaintiffs propose, "this Court should enforce the [arbitration] agreement 'according to its terms'" (ECF 34, p. 21) and grant Uber's Motion.

Dated: July 13, 2021                              Respectfully submitted,

                                                    **UBER TECHNOLOGIES, INC.**

/s/ *Courtney B. Wilson*
Courtney B. Wilson, Esq.
Florida Bar No. 0614580
E-Mail: cwilson@littler.com
Secondary E-Mail: lshelnut@littler.com
LITTLER MENDELSON, P.C.
The Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL  33131
Telephone:  305.400.7500
Facsimile:   305.603.2552

Andrew M. Spurchise, Esq.
*Admitted Pro Hac Vice*
E-Mail: aspurchise@littler.com
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
Telephone:  212.583.9600
Facsimile:   212.832.2719

Sophia Behnia, Esq.
*Admitted Pro Hac Vice*
E-Mail: sbehnia@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:  415.433.1940
Facsimile:   415.399.8490

4812-1348-9392.5 / 073208-2026