UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 21-14057-CIV-CANNON

**KATHLEEN SHORT**
and **HAROLD WHITE**,

    Plaintiffs,

v.

**UBER TECHNOLOGIES, INC.**,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss or Stay First Amended Complaint, Strike Class Allegations and Compel Individual Arbitration ("Motion to Compel") [ECF No. 31], filed on June 1, 2021. The Court has reviewed the Motion to Compel, Plaintiffs' Response in Opposition [ECF No. 34], Defendant's Reply [ECF No. 37], and the full record. Following that review, Defendant's Motion to Compel is **GRANTED.**

### BACKGROUND[1]

Plaintiffs, Kathleen Short ("Short") and Harold White ("White"), bring this Florida-based collective action and class action against Defendant, Uber Technologies, Inc. ("Uber"), alleging that Uber has a policy of "willfully misclassifying its drivers as independent contractors, when, in fact, each such driver is and/or was an employee of Uber in Florida" [ECF No. 27 ¶ 2]. Short and White seek to represent a class of current and former Uber drivers, defined in the Amended Complaint as all "drivers who, at any time during the period from February 3, 2018, to the present

---

[1] The following facts are drawn from Plaintiffs' Amended Complaint [ECF No. 27] and the Declaration of Brad Rosenthal, Director of Strategic Operational Initiatives for Uber Technologies, Inc. [ECF No. 31-1].

(the 'Collective Period'), have worked, or currently work, as a driver for Uber in Florida" [ECF No. 27 ¶ 29].

Uber owns and operates a ridesharing service that conducts regular business in Florida [ECF No. 24 ¶ 6]. To provide transportation services to riders, a driver must download Uber's Driver App and create an account [ECF No. 31-1 ¶¶ 6–7]. Drivers cannot access the app to generate requests from potential riders unless the driver reviews and accepts Uber's terms and conditions agreement ("Agreement") [ECF No. 31-1 ¶¶ 10–13]. The agreement contains an arbitration provision, which states in pertinent part as follows:

> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes between you and us, or between you and any other entity or individual, arising out of or related to your application for and use of an account to use our Platform and Driver App as a driver . . . the nature of your relationship with us (including, but not limited to, any claim that you are our employee). . . compensation, minimum wage, expense reimbursement, overtime . . . and claims arising under the . . . Fair Labor Standards Act . . . federal, state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state, or local statutory, common law and legal claims . . . arising out of or relating to your relationship with us or the termination of that relationship.

[ECF No. 31-1, p. 74].

Additionally, the arbitration provision precludes drivers from litigating claims in a class action:

> Both Uber and you agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or for you to participate as a member in any such class or collective proceeding.

[ECF No. 31-1, p. 77].

Short alleges that she was a driver for Uber beginning in March 2018 until May 2020 in Sebastian, Florida [ECF No. 27 ¶ 4]. According to Uber's business records, Short accepted Uber's Agreement three times—first on March 16, 2017, a second time on November 26, 2019, and finally

on January 10, 2020 [ECF No. 31-1 ¶¶ 16–17]. White alleges that he was a driver for Uber beginning in December 2016 until May 2020 in Tallahassee, Florida [ECF No. 27 ¶ 5]. According to Uber's business records, White first accepted the agreement on December 18, 2016, again on November 27, 2019, and finally on January 9, 2020 [ECF No 31-1 ¶¶ 16–17].

## PROCEDURAL HISTORY

On February 3, 2021, Short filed a two-count Complaint on behalf of herself and other drivers for Uber, based on Uber's alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and Florida's Minimum Wage Act, Fla. Stat. § 448.100, *et seq*. [ECF No. 1]. On March 23, 2021, the parties filed a joint motion to stay proceedings pending Uber's forthcoming motion to compel arbitration of Plaintiff claims [ECF No. 17]. The Court granted the parties' joint motion to stay proceedings on April 16, 2021 [ECF No. 25]. Short then amended the Complaint on April 26, 2021, naming White as an additional plaintiff [ECF No. 27]. Uber subsequently filed the instant Motion to Compel on June 22, 2021 [ECF No. 31]. The Motion is ripe for adjudication [ECF Nos. 34, 37].

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the validity of an arbitration agreement. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The FAA embodies a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA provides that a written agreement to arbitrate a controversy "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When one party has failed, neglected, or refused to comply with an arbitration agreement, the FAA requires the federal district court to compel arbitration. *See id.* § 4; *see also Dean Witter Reynolds,*

*Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (observing that the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis in original).

The FAA extends to all contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. This Section implements Congress's intent "to exercise [its] commerce power to the full." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001) (quoting *Allied-Bruce, Terminix Cos. v. Dobson*, 513 U.S. 265, 270–71 (1995)). Under Section 1 of the FAA, there is an exemption from the Act for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

The Supreme Court has held that Section 1's residual clause— "any other class of workers engaged in foreign or interstate commerce"—applies only to "contracts of employment of transportation workers." *See Circuit City*, 532 U.S. at 118–19. "[A] court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019). And "[a] plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013) (citing *Bess v. Check Express*, 294 F.3d 1298, 1306–07 (11th Cir. 2002)).

**DISCUSSION**

There is no dispute that Uber's agreement requires a driver to arbitrate all FLSA claims [ECF No. 31-1, pp. 24–31; 51-59; 73–80]. Nor is there any dispute that Plaintiffs signed the agreement [ECF No. 25, p. 1 ("Plaintiff has not denied that she entered into a written agreement to arbitrate, on an individual basis, the claims she has brought in this litigation.")]. The question of whether arbitration must be enforced here thus turns on the applicability of Section 1' residual

clause. Plaintiffs argue that they are "unquestionably part of a class of transportation workers who are engaged in interstate commerce" and thus are exempt from the FAA's arbitration provisions [ECF No. 34, p. 13–18]; *see* 9 U.S.C. § 1. Uber responds that Plaintiffs should be compelled to arbitrate because Plaintiffs (or the class of Uber drivers they seek to represent) are not "engaged" in "interstate commerce" within the meaning of that exemption [ECF No. 31, pp. 12, 14–20].

In determining whether Section 1's exemption for "transportation workers" applies, courts have considered "not whether the individual worker actually engaged in interstate commerce, but whether the class of workers to which the complaining worker belonged engaged in interstate commerce." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (quoting *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988)). The Eleventh Circuit has not specifically weighed in on the question of whether rideshare drivers like the Plaintiffs in this case qualify for the Section 1 exemption, but the Eleventh Circuit has been firm that Section 1 applies only to transportation workers who "*actually engage in the transportation of goods in interstate commerce*" and are "employed in the transportation industry." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1289–90 (11th Cir. 2005) (emphasis added); *see also Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1351 (11th Cir. 2021).

The Court has considered the authority on the applicability of the Section 1 exemption to rideshare drivers like the Plaintiffs here and finds persuasive the reasoning of the courts that have determined that Section 1 does not apply such that Plaintiffs may avoid arbitration.[2] "[T]he

---

[2] *See, e.g., Capriole v. Uber Techs., Inc.*, No. 20-16030, 2021 WL 3282092 (9th Cir. Aug. 2, 2021) (holding that Uber drivers as a class of workers do not fall within the "interstate commerce" exemption from the FAA); *Osvatics v. Lyft, Inc.*, No. 20-CV-1426 (KBJ), 2021 WL 1601114, at *8 (D.D.C. Apr. 22, 2021) (collecting cases); *Rogers*, 452 F. Supp. 3d at 916; *Grice v. Uber Techs., Inc.*, No. 18-cv-2995, 2020 WL 497487, at *9 (C.D. Cal. Jan. 7, 2020); *Hinson v. Lyft, Inc.*, No. 1:20-CV-2209-MHC, 2021 WL 838411, at *7 (N.D. Ga. Feb. 26, 2021). *But see Haider v. Lyft, Inc.*, No. 20-cv-2997, 2021 WL 1226442, at *4 (S.D.N.Y. Mar. 31, 2021); *Islam v. Lyft, Inc.*, No.

question is 'not whether the *individual worker* actually engaged in interstate commerce, but whether *the class of workers to which the complaining worker belonged* engaged in interstate commerce.'" *Wallace*, 970 F.3d at 800 (quoting *Bacashihua*, 859 F.2d at 405) (emphasis in original); *see also Rogers*, 452 F. Supp. 3d at 915 ("The plaintiffs' personal exploits are relevant only to the extent they indicate the activities performed by the overall class.").

Moreover, the undisputed record does not support the contention that Uber drivers are, as a class, engaged in interstate commerce. As reflected in Uber's interrogatory responses from litigation in *Singh v. Uber Techs. Inc.*, 939 F.3d 210 (3d Cir. 2019), attached as an exhibit to Plaintiff's Response in Opposition, (1) 97.5% of all trips fulfilled by Uber nationwide between 2015 and 2020 were intrastate; (2) only 2.5% of all trips began and ended in a different state; (3) in Florida, only 0.02% of rides were interstate; and (4) the average distance for those Florida trips was 32.2 miles [ECF No. 31-2 ¶¶ 3–4; ECF No. 34, pp. 9–13]. Additionally, as Uber notes, "[o]nly 12.8% of drivers in 2020 made *any* interstate trips, and for those drivers, those interstate trips amount to *less than 2% of their trips*" (emphasis in original) [ECF No. 37, p. 5].

For these reasons, the Court determines that Plaintiffs are not covered by Section 1's exemption for transportation workers and are subject to the agreement to arbitrate any and all claims on an individual basis, including the FLSA claims in this case. Because the parties entered into a valid agreement to arbitrate and the dispute falls within the scope of the arbitration agreement, the Court **GRANTS** Uber's motion to compel arbitration.

---

20-CV-3004 (RA), 2021 WL 871417, at *14 (S.D.N.Y. Mar. 9, 2021); *Cunningham v. Lyft, Inc.*, 450 F. Supp. 3d 37, 47 (D. Mass. 2020); *Sienkaniec v. Uber Techs., Inc.*, 401 F. Supp. 3d 870, 871 (D. Minn. 2019).

CASE NO. 21-14057-CIV-CANNON

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Compel [ECF No. 31] is **GRANTED.**

2. Plaintiffs Kathleen Short and Harold White shall submit to arbitration on an individual basis regarding the claims they assert in this case.

3. This action is **STAYED** and shall be **ADMINISTRATIVELY CLOSED** pending completion of arbitration pursuant to the terms of the Arbitration Agreement in this case.

4. The parties shall notify the Court upon completion of arbitration, and either party shall have the right to move to reopen this case to resolve any remaining issues of contention.

**DONE AND ORDERED** at Fort Pierce, Florida this 14th day of September 2021.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record